UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
San Antonio Division

| | |
|---|---|
| KEITH A. SIMMONS and <br> MARCELLA C. SIMMONS, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. _____ <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

Keith A. Simmons ("Mr. Simmons") and Marcella C. Simmons ("Ms. Simmons"), by counsel, state as follows for their Complaint against Defendant United States of America:

### Jurisdiction and Venue

1. This action arises under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*. This Court is vested with jurisdiction to adjudicate this dispute pursuant to 28 U.S.C. § 1346(b).

2. In compliance with 28 U.S.C. § 2675, Mr. and Ms. Simmons filed notices of administrative claim with the Department of Veterans Affairs, attached as **Exhibit A**. Those claims were received by the Office of Chief Counsel on September 7, 2017. In addition, Mr. and Ms. Simmons provided the Department of Veterans Affairs with two expert reports, one prepared by a Board-certified endocrinologist, Dr. John M. Miles, and another prepared by a Board-certified ophthalmologist, Dr. William Waschler.

3. The Department of Veterans Affairs denied Mr. Simmons' claim on September 28, 2018. The Department of Veterans Affairs has not yet taken action on Ms. Simmons' claim, although more than six months has elapsed since the filing of her claim.

1

4.    Accordingly, Mr. and Ms. Simmons' causes of action are ripe to be litigated in this Court pursuant to 28 U.S.C. § 2675(a).

5.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1402(b) because the cause of action at issue in this case arose at the Audie L. Murphy VA Hospital ("Audie Murphy VA Hospital") at 7400 Merton Minter Boulevard, San Antonio, TX 78229.

6.    At all times relevant to this action, the United States owned and operated Audie Murphy VA Hospital and its affiliated clinics.

7.    At all times relevant to this action, the agents, servants, employees, and personnel of the United States were acting within the course and scope of their employment in providing and/or failing to provide medical care and treatment to Mr. Simmons.

8.    Mr. Simmons is a veteran of the United States Armed Forces, and thus is entitled to medical care and treatment at Audie Murphy VA Hospital and its affiliated clinics.

9.    The medical care described as follows was provided to Mr. Simmons at Audie Murphy VA Hospital and/or its affiliated clinics unless otherwise stated.

**Allegations**

10.    Mr. and Ms. Simmons restate and re-allege paragraphs 1 through 9 as if fully stated herein.

11.    On March 17, 2017 Mr. Simmons visited Dr. Pedro J. Rivera ("Dr. Rivera") in the ophthalmology clinic at Audie Murphy VA Hospital.

12.    As of his March 17, 2017 visit, Mr. Simmons' VA medical record noted a blood test result from only one week prior, on March 10, 2017, that showed Mr. Simmons had a hemoglobin A1c level of 6.1%, indicating an elevated blood sugar level and that he was pre-diabetic.

2

13. Pre-diabetes often does not develop into diabetes and, when it does, the development will usually take years.

14. Dr. Rivera noted that Mr. Simmons had a prednisone allergy and that he had a discussion with Mr. Simmons regarding that allergy, indicating that Dr. Rivera was aware of Mr. Simmons' medical history and of a possible prednisone sensitivity, signifying that some other treatment would be more appropriate.

15. Dr. Rivera also noted that Mr. Simmons did not have diabetes, but failed to note Mr. Simmons' A1c or blood sugar level.

16. The record does not indicate that Dr. Rivera ordered a blood test to determine or confirm Mr. Simmons' blood sugar level.

17. Dr. Rivera failed to inform Mr. Simmons that a well-known potential adverse reaction to prednisone is the development of diabetes mellitus, type II ("type II diabetes"), also known as steroid-induced diabetes mellitus.

18. Dr. Rivera did not discuss the fact that Mr. Simmons' medical records and history contained risk factors for steroid-induced diabetes mellitus including, most importantly, Mr. Simmons' A1c level, among others.

19. At that March 17, 2017 visit, Dr. Rivera prescribed a high dosage, 60 milligrams, of oral prednisone daily to Mr. Simmons.

20. After the March 17, 2017 visit, Mr. Simmons began taking prednisone as prescribed by Dr. Rivera.

21. On March 27, 2017, Mr. Simmons had a follow-up visit with Dr. Rivera. The record from that visit notes that Mr. Simmons reported polyuria (the production of a large volume of

urine) and that he was unable to use prednisone due to side effects. A common cause of polyuria is type II diabetes.

22. In Mr. Simmons' history, Dr. Rivera noted again that Mr. Simmons did not have diabetes.

23. During that same visit, Mr. Simmons reported that "last Friday" he had reduced the prednisone dosage from the prescribed 60 mg to 20 mg.

24. Instead of discontinuing the prednisone, Dr. Rivera adjusted Mr. Simmons' prescribed dosage to 20 mg.

25. At this March 27, 2017 visit, Dr. Rivera also ordered a series of blood tests for Mr. Simmons, though the record did not indicate specific tests for diabetes were among them.

26. In a March 29, 2017 addendum to the March 27, 2017 notes, Dr. Rivera noted the results of a comprehensive metabolic panel ("CMP") that indicated Mr. Simmons' blood glucose level was 616. Diabetes is generally defined as blood glucose levels over 200 in two or more casual plasma glucose tests.

27. In a separate March 29, 2017 note, Dr. Rivera indicated that he called Mr. Simmons and told him to go to the emergency department ("ED") for his high blood sugar.

28. On March 29, 2017, Mr. Simmons reported to the Audie Murphy VA Hospital ED.

29. The ED note from that visit indicates that Dr. Rivera communicated with ED Physician's Assistant Michael Vecera ("Mr. Vecera") that Mr. Simmons' prednisone dosage should be reduced to 10 mg, not eliminated.

30. Mr. Simmons subsequently stopped taking prednisone on his own and until April 4, 2017, his blood glucose fluctuated, but remained high.

31. On April 4, 2017, Mr. Simmons was admitted to the Emergency Department at Baptist Emergency Hospital, where he was diagnosed with type II diabetes, a disease which has no cure.

32. Mr. Simmons now requires medication to treat his diabetes, his vision has already been negatively affected by the disease, and he will likely suffer from the effects of diabetes for the rest of his life, including but not limited to visual disturbances, peripheral neuropathy, the destruction of internal organs over time, a significantly increased risk of cardiovascular events, and a reduced life expectancy.

33. Dr. Rivera prescribed high levels of prednisone despite Mr. Simmons' pre-diabetes, his history of a prednisone allergy, and other risk factors for the well-known side effect of steroid-induced diabetes mellitus, and *within days* of starting the prednisone, Mr. Simmons developed symptoms of diabetes and became extremely hyperglycemic, and was ultimately diagnosed with type II diabetes, from which he will likely suffer for the rest of his life.

34. Mr. Simmons' injuries are a direct and proximate result of the negligent medical care provided by his healthcare providers at Audie Murphy VA Hospital.

## **Negligence**

35. Mr. and Ms. Simmons restate and re-allege paragraphs 1 through 34 as if fully stated herein.

36. As a provider of medical services to Mr. Simmons, the United States and its agents, servants, or employees at Audie Murphy VA Hospital and its affiliates, including but not limited to Dr. Rivera, owed Mr. Simmons a duty to provide him medical care consistent with the governing standard of medical care.

37. The agents, servants, or employees of the United States at Audie Murphy VA Hospital and its affiliates, including but not limited to Dr. Rivera, while acting within the scope of their employment, violated the applicable standards of medical care in the following respects:

   a. Negligent failure to minimize the chances for an adverse reaction to prednisone;

   b. Negligent failure to appreciate and further evaluate Mr. Simmons' recorded sensitivity and/or allergy to prednisone before prescribing it to him;

   c. Negligent failure to observe risk factors for steroid-induced diabetes mellitus in Mr. Simmons' medical record, including high A1c levels indicating pre-diabetes, among other risk factors, and a reported history of allergy to prednisone;

   d. Negligent failure to warn Mr. Simmons of the risk of steroid-induced diabetes mellitus from taking prednisone;

   e. Negligently prescribing prednisone despite the risk factors for steroid-induced diabetes mellitus which were present in Mr. Simmons' medical record;

   f. Negligent failure to prescribe alternative medications which did not include prednisone:

   g. Negligently continuing the prednisone prescription after Mr. Simmons' presentation with symptoms of diabetes mellitus; and

   h. Any and all other deviations from the standard of care which will be developed through further investigation, discovery, and expert review.

38. As a direct and proximate result of the aforementioned negligence of Defendant, Mr. Simmons claims the following damages:

a. Compensation for physical pain and suffering, mental and emotional pain and anguish, physical impairment, inconvenience, and loss of enjoyment of life;

b. Compensation for all economic damages, including medical bills and expenses, and incidental expenses; and

c. Compensation for any other damages sustained by Mr. Simmons as a proximate result of the negligence of the government's employees and/or agents.

39. As a direct and proximate result of the aforementioned negligence of Defendant, Ms. Simmons claims the following damages:

a. Compensation for mental or emotional pain or anguish, loss of consortium, loss of companionship and society, inconvenience, and loss of enjoyment of life.

WHEREFORE, Plaintiffs request that the Court grant judgment in their favor against the Defendant in the amount of Two Million Dollars ($2,000,000.00), together with any other costs as they may be lawfully entitled to recover.

          Respectfully submitted,

          KEITH A. SIMMONS
          MARCELLA C. SIMMONS

By:   /s/ Brian C. Steward
      Brian C. Steward
      State Bar of Texas # 19201100
      Ketterman, Rowland & Westlund
      16500 San Pedro, Suite 302
      San Antonio, Texas 78232
      (210) 490-7402
      (210) 490-8372 - Facsimile
      brian@krwlawyers.com
      Counsel for Plaintiff

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|
| 1. Submit to Appropriate Federal Agency:<br><br>Office of Chief Counsel (02)<br>Department of Veterans Affairs<br>155 Van Gordon, Suite 551<br>Lakewood, CO 80228 | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code.<br><br>Keith A. Simmons<br>c/o Rawls Law Group P.C.<br>211 Rocketts Way, Suite 100<br>Richmond, VA 23231 | |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☐ CIVILIAN | 4. DATE OF BIRTH<br>07/30/1961 | 5. MARITAL STATUS<br>Married | 6. DATE AND DAY OF ACCIDENT<br>See Box 8 and Attachment 1 | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

Keith A. Simmons ("Mr. Simmons") is a 57-year-old Army veteran who now suffers from Type II diabetes and vision impairment as a result of being inappropriately prescribed prednisone by ophthalmologist Pedro J. Rivera, MD, at the Audie L. Murphy Memorial VA Hospital ("Murphy VA Hospital") in San Antonio, Texas. Mr. Simmons had a history of hyperglycemia and a known allergy to prednisone, which Dr. Rivera was aware of prior to prescribing the medication to Mr. Simmons.

<u>Note</u>: The Basis of Claim is continued on Attachment 1 to this claim form and, accordingly, Attachment 1 is incorporated herein by reference.

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

10. PERSONAL INJURY/WRONGFUL DEATH

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

The negligence of VA health care providers as described in Box 8 above and the corresponding Attachment 1 caused Mr. Simmons injury including, but not limited to, development of diabetes; visual disturbance/loss; emotional distress; pain and suffering; and economic and non-economic losses.

11. WITNESSES

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Keith A. Simmons<br>Marcella C. Simmons<br>Healthcare providers of Mr. Simmons at the Murphy VA Hospital<br>Healthcare providers of Mr. Simmons at Baptist Emergency Hospital | 8618 White Shadow, San Antonio, TX 78249<br>8618 White Shadow, San Antonio, TX 78249<br>7400 Merton Minter Boulevard, San Antonio, TX 78229<br>8230 N 1604 W, San Antonio, Texas 78249 |

12. (See instructions on reverse). AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY<br>$2,000,000.00 | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights).<br>$2,000,000.00 |
|---|---|---|---|

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side).<br><br>*[signature]* Glen H. Sturtevant Jr.<br>Attorney for Claimant | 13b. PHONE NUMBER OF PERSON SIGNING FORM<br>(804) 622-0675 | 14. DATE OF SIGNATURE<br>September 5, 2017 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

EXHIBIT A                                                    1

| INSURANCE COVERAGE |
|---|
| In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property. |

15. Do you carry accident insurance?   ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   ☐ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?   ☐ Yes   ☐ No   17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

19. Do you carry public liability and property damage insurance?   ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☐ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) **BACK**

EXHIBIT A                                                                                                                                    2

**Attachment 1 to FTCA Claim of Keith A. Simmons**

8.      **Basis of Claim** – *continued from SF-95*

Prednisone is a corticosteroid used as an anti-inflammatory medication. Corticosteroids mimic the action of cortisol, the hormone produced by the kidneys that is responsible for bringing on the body's classic stress response of higher blood pressure and increased blood glucose levels. Corticosteroids like prednisone increase insulin resistance, thereby allowing blood glucose levels to rise and remain higher. Consequently, it is important to note that among the documented side effects of prednisone is the development of Type II diabetes, often referred to in this context as "steroid diabetes."

This is especially important here because Mr. Simmons had a history of hyperglycemia (high blood sugar), but had never been diagnosed with diabetes. Also of note is that Mr. Simmons had a known allergy to prednisone. Indeed, Mr. Simmons' medical records at the Murphy VA Hospital clearly documented that he suffered from a prednisone allergy:

```
Allergies:  PREDNISONE, PAXIL
```

In March 2017, Mr. Simmons began experiencing pain and redness in his left eye that did not resolve with over-the-counter medication.

On March 17, 2017, Mr. Simmons visited Dr. Rivera in the ophthalmology clinic at the Murphy VA Hospital regarding his eye pain. During this visit, Dr. Rivera acknowledged in Mr. Simmons' medical records that he in fact had an allergy to prednisone:

```
NOTE: PREDNISONE IS LISTED AN ALLERGY BUT PATIENT IS NOT 100 % SURE THAT HE IS
ALLERGIC TO PREDNISONE. HE WAS TAKING OTHER MEDICATIONS AT THE SAME TIME.
```

Despite this documented allergy in the medical records, Dr. Rivera nonetheless prescribed Mr. Simmons with prednisone. Dr. Rivera also noted in the medical records that Mr. Simmons was not diabetic:

```
NO DIABETES.
```

Despite confirmation that Mr. Simmons did not have diabetes, Dr. Rivera ignored the fact that Mr. Simmons suffered from hyperglycemia and was therefore at risk of developing diabetes from the use of a steroid like prednisone (regardless of the fact that Mr. Simmons also was allergic to prednisone).

Moreover, Mr. Simmons' Murphy VA Hospital records also showed that his A1C level was 6.1% on March 10, 2017, just a week before his visit with Dr. Rivera. The A1C test is a blood test that determines a person's average levels of blood glucose over the preceding three month period. A normal A1C level is below 5.7%; 6.5% or above indicates diabetes; and 5.7% to 6.4% is pre-diabetes. Thus, Mr. Simmons was still in the pre-diabetic range just a week before Dr. Rivera directed him to take the prednisone.

Over the following weeks, Mr. Simmons continued to take the prednisone as instructed by Dr. Rivera.

During that time, Mr. Simmons developed polyuria, a condition involving the passage of large volumes of urine with an increase in urinary frequency. Dr. Rivera concluded during a visit on March 27, 2017 that Mr. Simmons' development of polyuria was secondary to his prednisone allergy. Importantly, however, polyuria is actually a symptom of the onset of diabetes.

On March 29, 2017, Mr. Simmons had blood work done at the Murphy VA Hospital. The results showed that his blood glucose was extraordinarily high at 616. Dr. Rivera called Mr. Simmons and told him to admit himself to the Emergency Department at the hospital.

Over the following week, Mr. Simmons' blood glucose levels fluctuated and remained high.

3

On April 4, 2017, just weeks after he was started on prednisone by Dr. Rivera, Mr. Simmons was admitted to the Emergency Department at Baptist Emergency Hospital, where he was diagnosed with Type II diabetes.

Because Dr. Rivera improperly prescribed prednisone to Mr. Simmons, who was both pre-diabetic and allergic to prednisone, Mr. Simmons developed Type II diabetes, which he will suffer from for the rest of his life. Indeed, Mr. Simmons has already suffered sequelae related to the diabetes diagnosis, including ophthalmologic disturbances such as blurred vision and light flashes.

The Murphy VA Hospital healthcare providers' deviations from the standard of care in treating Mr. Simmons include, but are not limited to, the following: (a) the negligent prescribing of prednisone to Mr. Simmons; (b) negligent failure to monitor Mr. Simmons' blood glucose levels; and (c) other deviations from the standard of care which will be developed through further investigation, discovery, and expert review. Had Murphy VA Hospital personnel, including Dr. Rivera, appropriately treated Mr. Simmons, he likely would not have developed Type II diabetes.

Please note that the claim description in Box 8 and Attachment 1 is intended to be a good faith effort to orient the VA to the care presently believed to be deficient and the injuries presently believed to have been sustained as a result of those deficiencies. However, as is often the case in medical claims, a detailed review of the medical records in conjunction with expert reports may reveal additional shortcomings in the care and/or injuries. Thus, the "Basis of Claim" provided is not meant to be exhaustive of all possible theories of recovery for Mr. Simmons. Rather, the VA is hereby put on notice for the purposes of conducting its claim investigation that Mr. Simmons' claim seeks recovery for all aspects of the care provided at the Murphy VA Hospital, which deviated from the standard of care and caused his injuries (whether specifically enumerated in the claim form or not).

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency:<br><br>Office of Chief Counsel (02)<br>Department of Veterans Affairs<br>155 Van Gordon, Suite 551<br>Lakewood, CO 80228 | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code.<br><br>Marcella C. Simmons<br>c/o Rawls Law Group P.C.<br>211 Rocketts Way, Suite 100<br>Richmond, VA 23231 |
|---|---|

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY ☐ CIVILIAN | 4. DATE OF BIRTH<br>07/30/1961<br>(Keith Simmons) | 5. MARITAL STATUS<br>Married | 6. DATE AND DAY OF ACCIDENT<br>See Box 8 and Attachment 1 | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

Marcella C. Simmons ("Mrs. Simmons") is the wife of Keith A. Simmons ("Mr. Simmons"), a 57-year-old Army veteran who now suffers from Type II diabetes and vision impairment as a result of being inappropriately prescribed prednisone by ophthalmologist Pedro J. Rivera, MD, at the Audie L. Murphy Memorial VA Hospital ("Murphy VA Hospital") in San Antonio, Texas. Mr. Simmons had a history of hyperglycemia and a known allergy to prednisone, which Dr. Rivera was aware of prior to prescribing the medication to Mr. Simmons.

<u>Note</u>: The Basis of Claim is continued on Attachment 1 to this claim form and, accordingly, Attachment 1 is incorporated herein by reference.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

The negligence of VA health care providers as described in Box 8 above and the corresponding Attachment 1 caused injury to Marcella C. Simmons, resulting in loss of consortium and services, emotional distress, mental suffering, and other economic and non-economic losses.

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) | |
| Keith A. Simmons<br>Marcella C. Simmons<br>Healthcare providers of Mr. Simmons at the Murphy VA Hospital<br>Healthcare providers of Mr. Simmons at Baptist Emergency Hospital | 8618 White Shadow, San Antonio, TX 78249<br>8618 White Shadow, San Antonio, TX 78249<br>7400 Merton Minter Boulevard, San Antonio, TX 78229<br>8230 N 1604 W, San Antonio, Texas 78249 | |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | | |
|---|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY<br>$1,000,000.00 | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights).<br>$1,000,000.00 | |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side).<br>*/s/ Glen H. Sturtevant Jr.*<br>Glen H. Sturtevant Jr.<br>Attorney for Claimant | 13b. PHONE NUMBER OF PERSON SIGNING FORM<br>(804) 622-0675 | 14. DATE OF SIGNATURE<br>September 5, 2017 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

EXHIBIT A                                       5

| INSURANCE COVERAGE |
|---|
| In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property. |
| 15. Do you carry accident insurance? ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   ☐ No |
| 16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?  ☐ Yes  ☐ No    17. If deductible, state amount. |
| 18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts). |
| 19. Do you carry public liability and property damage insurance? ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☐ No |

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in Item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

### PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

### PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) **BACK**

**Attachment 1 to FTCA Claim of Marcella C. Simmons**

8.  **Basis of Claim** – *continued from SF-95*

Prednisone is a corticosteroid used as an anti-inflammatory medication. Corticosteroids mimic the action of cortisol, the hormone produced by the kidneys that is responsible for bringing on the body's classic stress response of higher blood pressure and increased blood glucose levels. Corticosteroids like prednisone increase insulin resistance, thereby allowing blood glucose levels to rise and remain higher. Consequently, it is important to note that among the documented side effects of prednisone is the development of Type II diabetes, often referred to in this context as "steroid diabetes."

This is especially important here because Mr. Simmons had a history of hyperglycemia (high blood sugar), but had never been diagnosed with diabetes. Also of note is that Mr. Simmons had a known allergy to prednisone. Indeed, Mr. Simmons' medical records at the Murphy VA Hospital clearly documented that he suffered from a prednisone allergy:

```
Allergies:  PREDNISONE, PAXIL
```

In March 2017, Mr. Simmons began experiencing pain and redness in his left eye that did not resolve with over-the-counter medication.

On March 17, 2017, Mr. Simmons visited Dr. Rivera in the ophthalmology clinic at the Murphy VA Hospital regarding his eye pain. During this visit, Dr. Rivera acknowledged in Mr. Simmons' medical records that he in fact had an allergy to prednisone:

```
NOTE: PREDNISONE IS LISTED AN ALLERGY BUT PATIENT IS NOT 100 % SURE THAT HE IS
ALLERGIC TO PREDNISONE. HE WAS TAKING OTHER MEDICATIONS AT THE SAME TIME.
```

Despite this documented allergy in the medical records, Dr. Rivera nonetheless prescribed Mr. Simmons with prednisone. Dr. Rivera also noted in the medical records that Mr. Simmons was not diabetic:

```
NO DIABETES.
```

Despite confirmation that Mr. Simmons did not have diabetes, Dr. Rivera ignored the fact that Mr. Simmons suffered from hyperglycemia and was therefore at risk of developing diabetes from the use of a steroid like prednisone (regardless of the fact that Mr. Simmons also was allergic to prednisone).

Moreover, Mr. Simmons' Murphy VA Hospital records also showed that his A1C level was 6.1% on March 10, 2017, just a week before his visit with Dr. Rivera. The A1C test is a blood test that determines a person's average levels of blood glucose over the preceding three month period. A normal A1C level is below 5.7%; 6.5% or above indicates diabetes; and 5.7% to 6.4% is pre-diabetes. Thus, Mr. Simmons was still in the pre-diabetic range just a week before Dr. Rivera directed him to take the prednisone.

Over the following weeks, Mr. Simmons continued to take the prednisone as instructed by Dr. Rivera.

During that time, Mr. Simmons developed polyuria, a condition involving the passage of large volumes of urine with an increase in urinary frequency. Dr. Rivera concluded during a visit on March 27, 2017 that Mr. Simmons' development of polyuria was secondary to his prednisone allergy. Importantly, however, polyuria is actually a symptom of the onset of diabetes.

On March 29, 2017, Mr. Simmons had blood work done at the Murphy VA Hospital. The results showed that his blood glucose was extraordinarily high at 616. Dr. Rivera called Mr. Simmons and told him to admit himself to the Emergency Department at the hospital.

Over the following week, Mr. Simmons' blood glucose levels fluctuated and remained high.

On April 4, 2017, just weeks after he was started on prednisone by Dr. Rivera, Mr. Simmons was admitted to the Emergency Department at Baptist Emergency Hospital, where he was diagnosed with Type II diabetes.

Because Dr. Rivera improperly prescribed prednisone to Mr. Simmons, who was both pre-diabetic and allergic to prednisone, Mr. Simmons developed Type II diabetes, which he will suffer from for the rest of his life. Indeed, Mr. Simmons has already suffered sequelae related to the diabetes diagnosis, including ophthalmologic disturbances such as blurred vision and light flashes.

The Murphy VA Hospital healthcare providers' deviations from the standard of care in treating Mr. Simmons include, but are not limited to, the following: (a) the negligent prescribing of prednisone to Mr. Simmons; (b) negligent failure to monitor Mr. Simmons' blood glucose levels; and (c) other deviations from the standard of care which will be developed through further investigation, discovery, and expert review. Had Murphy VA Hospital personnel, including Dr. Rivera, appropriately treated Mr. Simmons, he likely would not have developed Type II diabetes.

Please note that the claim description in Box 8 and Attachment 1 is intended to be a good faith effort to orient the VA to the care presently believed to be deficient and the injuries presently believed to have been sustained as a result of those deficiencies. However, as is often the case in medical claims, a detailed review of the medical records in conjunction with expert reports may reveal additional shortcomings in the care and/or injuries. Thus, the "Basis of Claim" provided is not meant to be exhaustive of all possible theories of recovery for Mrs. Simmons. Rather, the VA is hereby put on notice for the purposes of conducting its claim investigation that Mrs. Simmons' claim seeks recovery for all aspects of the care provided to her husband, Keith A. Simmons, at the Murphy VA Hospital, which deviated from the standard of care and caused his injuries (whether specifically enumerated in the claim form or not).